968 A.2d 1191 (2009)
406 N.J. Super. 586
FRANKLIN MUTUAL INSURANCE COMPANY, Plaintiff-Respondent,
v.
METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. A-5265-07T2
Superior Court of New Jersey, Appellate Division.
Argued February 24, 2009.
Decided April 17, 2009.
*1192 Marc R. Jones, Cherry Hill, argued the cause for appellant (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. Jones, on the brief).
Fredric P. Gallin, Edison, argued the cause for respondent (Methfessel & Werbel, attorneys; Mr. Gallin, of counsel and on the brief).
Before Judges WINKELSTEIN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
WINKELSTEIN, P.J.A.D.
In this declaratory judgment action, we are asked to determine how the "continuous trigger" theory adopted by the New Jersey Supreme Court in Owens-Illinois, Inc. v. United Insurance Co., 138 N.J. 437, 650 A.2d 974 (1994), is applied in allocating insurance coverage in long-term environmental contamination cases when the contaminated property changes ownership while the contamination takes place. Under the Owens-Illinois model, insurance coverage for these types of cases is assessed among an insured's insurance carriers pro rata, based on the degree of risk each carrier assumed. Id. at 478-79, 650 A.2d 974. If a property owner is uninsured for a period of the time while the contamination occurs, the property owner is personally responsible for a pro rata share of the cleanup costs, having assumed the risk of being uninsured. Id. at 479, 650 A.2d 974. Each year the contamination occurs is treated as a separate occurrence. Id. at 478-79, 650 A.2d 974.
The Owens-Illinois line of cases address the method of allocating insurance coverage when an individual property owner is insured by more than one carrier during the period of contamination. The cases do not address the issue here, which is how to apply the pro rata allocation formula when the property had more than one owner during the period of contamination.
The contamination occurred to a residential property from the leak of underground storage tanks containing home heating oil. During the period of contamination, the property had two owners. The leak began when the property was owned by John Clark; the parties have not determined whether he had insurance coverage for the contamination, and they have agreed not to pursue him for a share of the cleanup costs.
The leak continued after Peter and Carol Tsairis (collectively, Tsairis) purchased the property from Clark. Tsairis was either initially uninsured, or the insurance carrier when Tsairis purchased the property has not been identified. Tsairis subsequently obtained insurance coverage from Metropolitan Property & Casualty Insurance Company, and then from Franklin Mutual Insurance Company. When the leak was discovered, Franklin Mutual insured the property and paid the cleanup costs. Franklin Mutual then sought a pro rata reimbursement from Metropolitan. Franklin Mutual and Metropolitan have agreed not to seek contribution from Tsairis for the time Tsairis may have been uninsured.
The parties could not agree on the method of allocation for coverage. Metropolitan argues that all of the liability insurance from all policies covering the property during *1193 the entire period of contamination, regardless of who owned the property, should be considered in calculating Metropolitan's share of coverage. Franklin Mutual asserts that Metropolitan's liability is based on a pro rata allocation of the cleanup costs between insurers for the same named insuredthat the coverage allocation would be between Metropolitan and Franklin Mutual, without regard to the period of time that Clark owned the property.
The trial judge agreed with Franklin Mutual. He concluded that the Owens-Illinois formula is applied separately to each individual insured. We agree, and conclude that the pro rata allocation principles established in Owens-Illinois apply to the carriers for each individual insured, not, as is argued by Metropolitan, collectively to all of the triggered policies for all of the insureds who owned the property during the period of contamination. Simply put, the allocation is only among insurers that provide coverage to the same named insured, to indemnify that insured for its share of the cleanup costs. Consequently, Metropolitan's allocated share for cleanup costs is determined without regard to any liability insurance coverage that Clark may have had during the period of contamination. Accordingly, we affirm.
The facts are substantially undisputed. Tsairis purchased property located on Hillside Avenue in Nutley (the property) from Clark on December 7, 1995. On August 25, 2005, two underground storage tanks for home heating oil at the property were discovered to be "leaking product into the surrounding soil." Studies showed that the fuel from soil found at the sites was approximately eighteen to nineteen years old.
Metropolitan insured the property from December 14, 1999, to December 14, 2002. Franklin Mutual insured the property from December 14, 2002, until August 25, 2005, the date that the contamination was discovered. Franklin Mutual incurred costs of $44,567.70 to remediate the property due to the damage caused by the contamination. Metropolitan does not dispute that amount. It argues that its allocated share of the total cost is 15.63 percent, or $6965.61.
To develop its percentage of allocation, Metropolitan included in its calculations the number of years that the contamination had occurred while the property was owned by Clark, and assumed that an unknown carrier insured the property during that time. Metropolitan's argument is that all applicable insurance, from all policies that could have been triggered during the period of contamination, be used to calculate Metropolitan's share of coverage. It relies on the policy behind the Owens-Illinois decision in formulating the pro-rata allocation method, to maximize resources to cope with environmental damage. See Owens-Illinois, supra, 138 N.J. at 472, 650 A.2d 974.
Franklin Mutual takes a different view. It argues that the Owens-Illinois formula does not create an allocation scheme among different tortfeasors responsible for an environmental tort or a Spill Compensation and Control Act (the Spill Act), N.J.S.A. 58:10-23.11 to 10-23.24, claim, but rather, it provides "a method of allocation of responsibility between carriers of a duty to defend and indemnify in those situations where an individual insured has more than one insurance carrier over the triggered period of time." It contends that "each individual defendant's share of responsibility would be assessed and then for each individual defendant's responsibility an Owens-Illinois allocation would be made to figure out how the carriers would divvy up their own insured's share of responsibility."
*1194 In agreeing with Franklin Mutual, the trial judge calculated that Tsairis owned the property for 116 months during the period of contamination. Metropolitan provided coverage for thirty-six of those months, or 31.03448 percent of the time that Tsairis owned the property. Consequently, the judge applied that percentage to the cleanup costs, and determined Metropolitan's share of the remediation costs were $13,831.16. We agree with that methodology.
An insurance carrier's responsibility to respond to a claim is "triggered" by an "event or events" determined by the terms of the insurance policy. Quincy Mut. Fire Ins. Co. v. Borough of Bellmawr, 172 N.J. 409, 416, 799 A.2d 499 (2002) (quotation omitted). The difficulty with environmental contamination claims is that the damage that triggers insurance liability does not occur as the result of a single event, but "usually is attributable to events that begin, develop and intensify over a sustained period of time [and][t]herefore, the damages ha[ve] `"occurred" or been "triggered" along a continuous timeline during which several successive policies issued to the insured were in effect.'" Id. at 416-17, 799 A.2d 499 (quoting Mary R. DeYoung & William R. Hickman, Allocation of Environmental Cleanup Liability Between Successive Insurers, 17 N. Ky. L.Rev. 291, 294 (1990)).
In Owens-Illinois, supra, 138 N.J. at 450, 459, 650 A.2d 974, the New Jersey Supreme Court developed a method to allocate damages between insurers responsible for the costs associated with an environmental incident if the date of the occurrence of the injury cannot be pinpointed. The Court instituted the "continuous-trigger theory," holding:
[W]hen progressive indivisible injury or damages results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a [comprehensive general liability policy]. That is the continuous-trigger theory for activating the insurers' obligation to respond under the policies. [Id. at 478-79, 650 A.2d 974.]
The Court formulated a pro-ration by years and policy limits method for allocating liability among different insurance carriers responsible for costs. The Court stated:
[A]ny allocation should be in proportion to the degree of the risks transferred or retained during the years of exposure.... [T]he better formula ... [is to] allocate[] the losses among the carriers on the basis of the extent of the risk assumed, i.e., proration on the basis of policy limits, multiplied by years of coverage.
[Id. at 475, 650 A.2d 974.]
In other words, "a given insurer's liability is determined by comparing its particular exposure to the total amount of exposure assumed by all carriers of the triggered policies." Spaulding Composites Co., Inc. v. Aetna Cas. and Sur. Co., 176 N.J. 25, 36, 819 A.2d 410 (2003) (quoting Thomas M. Jones & Jon D. Hurwitz, An Introduction to Insurance Allocation Issues in Multiple-Trigger Cases, 10 Vill. Envtl. L.J. 25, 44-45 (1999)). The percentage arrived at after this comparison is then applied to the total amount of the policyholder's loss. Ibid.
The Owens-Illinois Court chose this theory after "identif[ying] several public interest factors relevant to the appropriate method of allocating insurance coverage, including the efficient use of available resources, the interests of simple justice, and the need for an `efficient response' to the logistical challenge posed by environmental insurance litigation." Carter-Wallace, Inc. v. Admiral Ins. Co., *1195 154 N.J. 312, 327, 712 A.2d 1116 (1998) (quoting Owens-Illinois, supra, 138 N.J. at 472-74, 650 A.2d 974). The Court also determined that because insurance companies are in a good position to achieve cost efficiency by spreading costs throughout the industry, the law should "at a minimum, not provide disincentives to parties to acquire insurance when available to cover the risks." Id. at 322, 650 A.2d 974 (quoting Owens-Illinois, supra, 138 N.J. at 472-73, 650 A.2d 974). Although the Court in Owens-Illinois developed the continuous-trigger theory in regard to asbestos-related personal injury, the theory has been subsequently applied to "progressive environmental injury" cases. Benjamin Moore & Co. v. Aetna Cas. & Surety Co., 179 N.J. 87, 91, 843 A.2d 1094 (2004); Quincy Mut. Fire Ins. Co., supra, 172 N.J. at 422, 799 A.2d 499; Carter-Wallace, supra, 154 N.J. at 321, 712 A.2d 1116.
The Owens-Illinois line of cases focus on the allocation of an individual insured's proportionate share of liability for cleanup costs for environmental contamination among that insured's carriers. See Spaulding Composites Co., supra, 176 N.J. 25, 819 A.2d 410 (addressing a non-cumulation clause in the context of a dispute regarding each party's liability for costs incurred in cleaning a contaminated site, but where the court did not reach the question of the actual allocation of responsibility between insurance carriers); Carter-Wallace, Inc., supra, 154 N.J. 312, 712 A.2d 1116 (examining the method of allocating insurance coverage for the costs incurred by a single defendant after multiple responsible parties reached an agreement with the Environmental Protection Agency (EPA) to allocate cleanup costs among those defendants); Quincy Mutual Fire Ins., supra, 172 N.J. 409, 799 A.2d 499 (in a lawsuit initiated by the EPA against hundreds of defendants, the Court applied the Owens-Illinois formula in determining each carrier's pro rata risk allocation only to an individual defendant, not accounting for the liability of the remaining defendants' insurance carriers). As the Spaulding Court characterized the use of the formula, "the insured is required to pay its `aliquat' share of both defense and indemnification." 176 N.J. at 36, 819 A.2d 410.
Simply put, because of the ongoing nature of long-term environmental contamination, the date of the occurrence of the contamination cannot be isolated to a specific day, month, or year. Thus, when an insured had more than one liability carrier during the period of contamination, a means was necessary to determine when coverage was triggered and to fairly allocate responsibility for remediation costs between or among those triggered policies. Owens-Illinois, supra, 138 N.J. at 441, 650 A.2d 974. The Court developed the continuous trigger allocation method to address those needs.
The allocation of an insured's proportionate share of liability among its insurers is a separate question from the insured's proportionate share of liability for the cleanup costs. The latter responsibility is joint and several. N.J.S.A. 58:10-23.11g(c)(1) (under the Spill Act, any person or entity responsible for the discharge of a hazardous substance is held strictly liable for all cleanup and removal costs without regard to fault). The Owens-Illinois allocation formula does nothing more than allocate responsibility for the insured's share of cleanup costs when the insured has more than one carrier that provided coverage for the property during the period of contamination. That is because carriers are only responsible for defending and indemnifying their insureds, and the Owens-Illinois principles establish a means of allocating coverage among those carriers for their pro rata share of that obligation. Benjamin Moore, supra, *1196 179 N.J. at 99, 843 A.2d 1094 (insurers are allocated losses based on their undertakings; recovery is dependent upon the basic provisions of the insurance contract between insured and insurer). Thus, that others may also be responsible for a share of the cleanup costs is not a factor in the allocation of responsibility among an individual insured's carriers for their respective share of their insured's costs.
Affirmed.